IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA L. LAWRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-434-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Donna L. Lawrence requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born January 26, 1960, and was fifty-one years old at the time of the administrative hearing (Tr. 38). She completed eighth grade, and has worked as a cleaner/housekeeper (Tr. 23, 153). She alleges inability to work since May 15, 2009, due to kidney disease, abuse by a former spouse, and arthritis in both shoulders (Tr. 149).

**Procedural History**

On June 1, 2009, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Yellowtail conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated May 2, 2011 (Tr. 15-24). The Appeals Council denied review, so the ALJ's written opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform a range of light work as defined in 20 C.F.R. § 416.967(b), limited to performing tasks involving up to four to six hours of standing/walking (two to four hours at a time), and two to hours hours of sitting (up to two hours at a time) in an eight-hour workday (with normal breaks). In addition, the claimant must avoid reaching overhead with her left arm and can frequently but not constantly handle items with her

left hand. The ALJ also limited the claimant to unskilled, routine, repetitive tasks with simple instructions including spoken instructions and visual demonstration to learn new tasks (Tr. 20). The ALJ concluded that although the claimant could not return to any past relevant work, she was nevertheless not disabled because there was other work she could perform in the regional and national economies, *e. g.*, assembler of small products and garment sorter (Tr. 24).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate her credibility; and (ii) by failing to develop the record as to her limited intelligence and IQ. The Court finds the claimant's first contention persuasive for the following reasons.

The ALJ determined that the claimant's bilateral nephrolithiasis, degenerative disc disease of the cervical spine with mild spondylosis, degenerative disc disease of the lumbar spine with mild right lateral stenosis and mild levoscoliosis, mood disorders, post-traumatic stress disorder (PTSD), and a rule out diagnosis of borderline to mild mental retardation, were all severe impairments (Tr. 18). The relevant medical evidence reveals an April 14, 2008 x-ray demonstrating mild degenerative spondylosis after she presented to Mercy Medical Clinic with complaints of left and right arm pain, as well as pain on the right side with numbness (Tr. 198, 201). In June 2009, the claimant was taken to the emergency room in Alabama with "quite a few" complaints, and was diagnosed following MRI and CT scans with what appeared to be multifactorial left flank pain with a musculoskeletal component from a previous fall as well as some potential ureteral colic from a left ureteral calculus; left ureteral calculus, with some evidence of hydronephrosis

on MRI scanning; left lower extremity tingling of undetermined etiology; left upper extremity tingling, possibly from neuroforaminal encroachment from a bone spur at C5-6; neck pain secondary to a recent fall; disc herniation at the C5-6 level to the right side, which does not correlate with any clinical presentation; and mild olecranon bursitis involving the left elbow (Tr. 204-205, 209-212). That same month, she again went to the hospital for problems with her kidney, and underwent a cystourethroscopy (Tr. 279). In August 2010, the claimant was referred to physical therapy for her complaints of neck and back pain, and was discharged with no improvement in October 2010 after she reported no relief and increased pain (Tr. 282-290). Dr. Ammari completed a physical capacity evaluation on October 8, 2010, indicating that she could stand/walk 2-4 hours at a time for 4-6 hours total in an eight-hour workday, sit 0-2 hours at a time for 2-4 hours total. He further stated that she was restricted in using hands/fingers for repetitive motion because her neck and left limitations and numbness of the left arm, as well as restricted in foot controls due to left leg problems that affected her foot (Tr. 384).

Dr. Aleada Lee-Tarver, Ph.D. reviewed the claimant's medical evidence as well as her reports of history. Dr. Lee-Tarver concluded that the claimant had spent the last ten years as a victim of spousal abuse and had problems that prevented her from performing routine tasks. Further, Dr. Lee-Tarver doubted the claimant could read above a second or third grade level, but believed she could manage her own benefits effectively (Tr. 238-239). She diagnosed the claimant with a mood disorder due to kidney disease with depressive features, PTSD, borderline to mild mental retardation rule out, kidney disease, and limited educational abilities, job skills, and financial resources. She assessed the

claimant with a GAF score of 70 (Tr. 239). A state agency physician reviewed the claimant's records and assessed her with mild degrees of limitation in the three areas of functional limitations, and no episodes of decompensation (Tr. 254-256).

In January 2010, the claimant began receiving treatment at Siskiyou Community Health Center for depression, anxiety, neck pain, back pain, and rash (Tr. 291-297). She also received mental health treatment at Kern County Mental Health Department in July 2010, and treatment notes reflect that, *inter alia*, the claimant met the criteria for major depressive disorder with psychotic features and PTSD, and her symptoms significantly impaired her functioning in areas of independent living, social relationships, and vocation (Tr. 308). In September, Dr. Jagdeep Garewal, M.D. diagnosed the claimant with major depressive affective disorder, recurrent, severe, with psychotic behavior (296.34) and PTSD (309.81), in addition to her physical impairments of back and neck pain and kidney disease. He assessed her with a GAF of 40 (Tr. 312). Dr. Garewal also noted that the claimant's affect was constructed and anxious, and her mood depressed and anxious, and that she had a below average intellect (Tr. 311). He further indicated that her recent and remote memory were both deficient, and included a notation that she had poor attention and concentration; noted she had concrete thought; but that her insight and judgment were both fair (Tr. 311). The claimant was discharged to the community in September 2010, with the evaluation that she had been unable to achieve her goals (Tr. 319).

Dr. Ammari completed a mental capacity evaluation of the claimant, indicating that she had limitations with bending, stooping, and climbing; depression and mental

-6-

illness with bipolar diagnosis and on medication; difficulty with focusing and paying attention; and difficulty with adapting to a new environment (Tr. 385).

At the administrative hearing, the claimant represented herself and testified that she could not read or write well enough to complete her disability applications on her own, could not read a newspaper or follow a recipe, and is able to sign her name but not write a letter (Tr. 40). She testified that she had recently been in California and taken care of her 22-year-old son who has schizophrenia "for a few months," for about 23 hours a month, and that the state of California had paid her for doing so (Tr. 41). She stated that she had not tried to look for any other work because "I can barely even do what I could do for him" (Tr. 42). She testified that her lower back pain, neck pain, migraines, and kidneys, as well as her mental problems such as going out in society, prevented her from working (Tr. 42-43). She testified that she occasionally uses a cane because her doctor told her to do so, and that she does not drive due to the pain in her back and neck that causes muscle spasms (Tr. 44-47). She believed she could be on her feet two hours a day at the most, and could sit for an hour and a half, and that she would need to lay down the rest of the time (Tr. 48-49). She further testified that she cannot lift a gallon of milk, and that she would have difficulty overhead reaching, as well as bending to pick something up (Tr. 50-51). She also testified she had trouble grasping things due to bad circulation in her hands that resulted in numbness (Tr. 51-52). As to her mental impairments, she stated that she has difficulty comprehending things, and that she stays to herself and avoids dealing with other people (Tr. 52-53).

In his written opinion, the ALJ noted the testimony of the claimant, then stated, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 21). The ALJ then summarized the medical evidence, giving great weight to Dr. Ammari's assessment despite its lack of independent objective findings because it was consistent with Dr. Lee-Tarver's opinion (Tr. 21). As to Dr. Tarver's opinion, he adjusted the RFC to reflect the claimant's reading and writing abilities and limited her to unskilled work (Tr. 21). He noted that despite her reports of using a cane, she ambulated with a normal gait and was in no distress in May 2010 at an exam (Tr. 22). He indicated that he considered the claimant's testimony regarding pain, but that an inability to work without pain did not satisfy the disability criteria (Tr. 23). He then concluded that the claimant's kidney condition did not preclude her from working (Tr. 23).

Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A

credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The Court finds that the ALJ's evaluation of the claimant's credibility fell below these standards.

First, although the ALJ mentioned Social Security Ruling 96-7p in an introductory paragraph, he did not set out the credibility factors in the ruling or 20 C.F.R. § 416.929, or apply such factors to the evidence in the case.[3] Although the ALJ was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), mere recitation of the factors is not enough, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4, and here the ALJ did not even recite them, let alone apply them to the evidence.

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. *See Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir.

---

[3] The factors to consider in assessing credibility are: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; (vii) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at *3, 1996 WL 374186 (July 2, 1996).

2012) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). *See also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

Third, the only reasoning in the ALJ's opinion that might apply to the claimant's credibility were the ALJ's statements that the claimant had testified that she sometimes used a cane but testing revealed she had a normal gait in May 2010 and his finding that she had not needed emergency treatment for her kidneys in eight months (Tr. 21-22). Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984)

("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). This is especially important where, as here, the ALJ found that the claimant had a number of pain-producing impairments, *i. e.*, degenerative disc disease of the cervical spine with mild spondylosis, and degenerative disc disease of the lumbar spine with mild right lateral stenosis and mild levoscoliosis.

Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Here, the ALJ stated that he had considered the claimant's complaints of pain but provided no analysis as to the claimant's pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. *See also Winfrey v.*

*Chater*, 92 F. 3d 1017, 1025 (10th Cir. 1996) ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.").

"Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. 1997). Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should properly evaluate the evidence, then re-assess the claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma